*314 OPINION OF THE COURT
Rhonda E. Fischer, J.
This case presents the court with a repetitive issue confronting domestic violence parts in the courts. The complaining witness/victim of domestic violence now wishes to recant her testimony. The recantations are the product of many imperatives, not all of which serve the interests of the victim or justice.
Defendant’s motion for an order, pursuant to CPL 410.20 (1), modifying the condition of probation as to participation in continued therapy and treatment for domestic violence, and for an order vacating and/or modifying the herein order of protection of this court dated February 3, 2010, is denied in its entirety.
Defense counsel moves postconviction and postsentencing for the above relief on three separate dockets after defendant, in a negotiated plea, was convicted and sentenced to 45 days in jail, three years of probation and a “stay away” order of protection in favor of complainant, Alana Dalessio. More specifically, the defendant in this case pleaded guilty to one count of stalking in the fourth degree, Penal Law § 120.45 (2), and one count of criminal contempt in the second degree, Penal Law § 215.50 (3), while a count of aggravated harassment in the second degree, Penal Law § 240.30 (1), was dismissed in satisfaction.
This court will first address the issue of the modification of a condition of probation. Specifically, the defendant was directed to attend a batterer intervention treatment program. Defense counsel offers no support for this relief, no authority and no change of circumstance, other than the complaining witness in her affidavit making a conclusory statement that she requested the defendant not be required to continue counseling because she believes he does not need it. Under the circumstances presented on the instant motion, the court will not modify the condition of probation requiring therapy and treatment for domestic violence. This court finds such therapy an appropriate part of the sentence and/or condition of probation. Therefore, this branch of the motion is denied.
Turning to the branch of the defendant’s motion for an order vacating and/or modifying the order of protection, defendant’s counsel, in support of the motion, presents the affidavit of the complainant Alana Dalessio who avers, in pertinent part, as follows:
“3. On or about February 8, 2010, an order of *315 protection was issued in my favor and against Greg Bohlman. At that time I had not been contacted by the District Attorney’s office and if I had been contacted, I would have told them that I did not require such an order of protection. I had previously informed the District Attorney’s Office that I did not want to pursue this case.
“4. I have since attempted to have said order of protection removed. I went to the District Attorney’s office at 99 Main Street, 3rd floor, Hempstead, NY, and was told that the case had to be brought before the Court.
“5.1 do not want an order of protection in my favor and against Greg Bohlman.
“6. I was the complaining witness against Mr. Bohlman because he was my prior boy friend and he would not stop contacting me and telling me how much he loved me. He did not physically threaten me. At that time, I just wanted him to stop contacting me.
“7. At this time, Mr. Bohlman does not present a threat to me. He and I wish to be able to converse, and communicate with each other. Having an order of protection prevents our ability to associate with each other. For that reason, I request that the order of protection be vacated.
“8.1 also request that he not be required to continue the domestic violence counseling that he has been ordered to attend by his probation officer. I do not believe he is a physical threat to me and do not believe he requires such counseling.
“9. I would be happy to appear before this Court with regard to the issues discussed herein.”
Defendant’s attorney again cites no cases in support of such a vacatur or modification of the order of protection. “We recognize that the issuance of an order of protection ‘incident to a criminal proceeding is an ameliorative measure intended to safeguard the rights of victims and witnesses both prior to and after conviction — it is not part of the sentence imposed’ ” (People v Hull, 52 AD3d 962, 963 [3d Dept 2008], quoting People v Nieves, 2 NY3d 310, 316 [2004]). The Hull Court permitted modification of the order of protection in regard to defendant’s biological children, who were not the subject of his conviction for downloading pornographic videos of children. The Hull *316 Court reasoned that, since the order of protection was imposed sua sponte, not requested by the People, and was not part of the negotiated plea, it was in the interest of justice to modify the order of protection as to defendant’s 15- and 16-year-old biological children so that the order expired on their 18th birthdays.
In opposing this branch of the motion, the People present a different picture of the relationship between the defendant and the complainant. According to complainant Alana Dalessio’s supporting deposition, dated April 10, 2009, she stated, in pertinent part, as follows:
“Greg and I broke up over a year ago, around March 2008. After we had broken up, Greg had been calling me, texting me, and sending me letters despite my repeated demands and requests he stop all contact with me. I filed a police report on October 13, 2008 because Greg just wouldn’t stop contacting me and I was becoming really frightened. Greg had been physically abusive to me during our on-and-off six year relationship. Some of the things Greg has done has been to hit me with a bag of items he had bought me, causing a black eye and requiring two stitches, he broke my car window, he burnt my hand with a lit cigarette, he choked me about three times, putting his hands around my neck and squeezing causing me to fear for my life, he slammed my head into his car window. There’s been a lot more abuse over the years. When I’ve tried to break up with him before, he threatened me with [a] knife threatening to kill me if I broke up with him. Another time I tried to break up with him, he threatened to kill himself while holding a razor to his wrist. Greg was tackled by a friend, the razor was taken away, and I drove him to the hospital. Greg’s repeated unwanted letters, text messages, and phone calls made me realize he would never stop and I didn’t know what Greg would do next. I received a call from Detective Monahan on October 14, 2008 and she said she was investigating my case and was going to call Greg. A little while later I received a text message from Greg’s cell phone, ‘Wow. Thanks. Goodbye.’ I called Det. Monahan and told her this. Det. Monahan called me later that night and told me she spoke to Greg and told him not to contact me any further in any way and that he was frightening me. After October 14, 2008, I continued to *317 receive numerous letters from Greg, professing his love and wanting to get back together. I was really afraid and began looking over my shoulder wherever I went, always afraid Greg would be there and he would hurt me or kill me, as he threatened to do in the past. On November 19, 2008 I went to Nassau County Family Court and received the Order of Protection against Greg. I got a few more letters after that, but was told the order hadn’t been served on Greg yet. Greg was served the order on November 26, 2008 and Greg stopped contacting me for about a month. The letters, text messages, and phone calls started again, sporadically though. I hoped Greg was going to stop again. We went to Family Court on December 11, 2008 and Greg was present. Greg was again served with the Order of Protection, Order Number 2008-005313 and signed by the Honorable Stacy D. Bennett, this time in the court. On January 15, 2009 I received a letter from Greg. I also received another letter on a date I can’t remember. The text messages increased. On Valentine’s Day Greg sent me candy and letters, but I tore up the card and threw out the candy. On March 2, 2009 I received another letter from Greg professing his love. Greg will not stop and I am afraid. I am afraid for my personal safety and my life. I did not give Greg Bohlman permission to contact me in any way or place me in fear for my life and I want Greg Bohlman arrested. I am giving this deposition to Det. Monahan which has been read by me, and it is the truth, /s/ Alana Dalessio s/s Det. Monahan.” (See exhibit A to People’s opposition.)
The People affirm in opposition that “[i]t would be error to overlook the amount of time this victim has spent trying to get away from a relentless pursuer only to allow them to date again.” Further, the People affirm in opposition that the complainant was in fear of the defendant when she originally met with the People and requested a stay away order of protection, and this stay away order of protection was part of the negotiated plea. Finally, the People affirm in opposition that
“[t]here are no new facts which would lead the [Pjeople to believe that this relationship would be any less toxic or that the defendant would not resume his criminal ways should the victim decide to break up with the defendant. There is nothing *318 here which the People, the Court, and the Defense were not aware of at the time of plea and sentence.”
Given the above opposition and the factual distinctions with People v Hull, this court will not exercise its discretion in the interest of justice to modify and/or vacate the order of protection. The court notes that complainant’s attempt to join in defendant’s application to vacate and/or modify the herein order of protection through her affidavit appears to fit within what is called the “honeymoon phase” of the “cycle of violence”(see People v Byrd, 51 AD3d 267 [1st Dept 2008]).* The Byrd Court specifically laid out the following:
“Domestic violence has three phases that comprise the ‘cycle of violence’: (1) the tension building phase, (2) the violence phase and (3) the honeymoon phase. During the first two phases the victim is reduced to a state of fear and anxiety due to impending or actual violence. In the honeymoon phase, the abuser acts with contrition, begs for forgiveness and makes declarations of love. During the honeymoon phase, the victim is seduced into believing that the abuse will cease and that the family will remain intact. This cycle repeats itself over many years . . .
“[D]uring the honeymoon phase, victims of domestic abuse often recant their reports of abuse and refuse to testify. During this phase, the batterer has, often in violation of an order of protection, repeatedly contacted the victim, professing apologies and declarations of love to trick the victim into believing that the violence will end. During this ‘reconciliation’ the batterer is able to convince the victim that recantation would solve their problems” {id. at 270).
For all the foregoing reasons, this aspect of defendant’s motion is denied.

 In 1979, Dr. Lenore Walker published the groundbreaking study on domestic violence and consequently introduced the idea of the “cycle of violence” (Carlson, Invisible Victims: Holding the Educational System Liable for Teen Dating Violence at School, 26 Harv Women’s LJ 351, 363 [2003]).